IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD TORO,<br><br>                Plaintiff,<br><br>    v.<br><br>MAYOR MICHAEL NUTTER, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 13-7552 |

FILED
AUG - 6 2015
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**OPINION**

**Slomsky, J.**                                                                                        **August 6, 2015**

**I.    INTRODUCTION**

        Plaintiff Richard Toro, proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983 against Defendant Corizon, Inc. ("Corizon") for failure to respond to his medical needs while Plaintiff was incarcerated at Curran-Fromhold Correctional Facility in Philadelphia, Pennsylvania.[1] (Doc. No. 3.)

        Before the Court is Defendant Corizon's Motion for Summary Judgment (Doc. No. 18) filed on November 10, 2014. For the following reasons, the Court will grant Corizon's Motion.[2]

---

[1] Toro filed the instant action on January 6, 2014 against Corizon, Mayor Michael Nutter, Philadelphia Prison System ("PPS") Commissioner Louis Giorla and PPS Warden Farrel. (Doc. No. 3 at 1.) Toro's claims against Defendants are combined in his pro se Complaint and not listed in separate counts. On March 4, 2014, Defendants Mayor Michael Nutter, PPS Commissioner Louis Giorla, and PPS Warden Farrell filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6), requesting that Toro's claims against them be dismissed. (Doc. No. 6.) Plaintiff did not to respond to the Motion to Dismiss after the Court granted him an additional opportunity to do so. (Doc. No. 7.) On April 7, 2014, the Court granted the Motion as uncontested, and the three Defendants were dismissed as parties to this action. (Doc. No. 9.)

[2] In deciding Corizon's Motion for Summary Judgment filed on November 11, 2014, the Court has considered the Complaint (Doc. No. 3), Corizon's Motion for Summary Judgment (Doc.

1

## II. BACKGROUND

The following facts are relevant to Corizon's Motion for Summary Judgment and are viewed in the light most favorable to Toro as the nonmoving party.[3]

From October 22, 2013 to March 26, 2014, Toro was incarcerated at Curran-Fromhold Correctional Facility, where Corizon was the independent contractor responsible for providing medical care to inmates. (Doc No. 18 at 1; Ex. B at 7.) During his incarceration, Toro submitted sick-call requests[4] for treatment of a skin infection in the groin area, dry skin on his chest, and chronic nose bleeds.[5] (Id., Ex. C at 33-35.) Toro also sought medical attention for lower back pain. (Id., Ex. B at 10-11.) Corizon medical staff evaluated these conditions during two separate examinations. (Id. at 12-15.) Despite undergoing these evaluations, Toro claims that he did not receive adequate medical care. (Doc. No. 3 at 3; Doc. No. 18, Ex. C at 33, 35.) His instances of medical need and his requests for treatment are described below in more detail.

---

No. 18), Toro's Deposition (Doc No. 18, Ex. B) and the pertinent exhibits. Plaintiff has not filed a Response in Opposition to the Motion for Summary Judgment.

[3] In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (internal quotation marks omitted). As Toro is the nonmoving party, the Court will view facts in the light most favorable to him.

[4] A sick-call request is made on a form provided by prison staff. The inmate completes the form and submits it in order to notify medical staff of the need for medical attention. (Doc. No. 18, Ex. B at 12-13.) According to Toro in his deposition, sick-call requests are responded to within three days. (Id. at 15.)

[5] Although not mentioned in the Complaint, Toro also included dry scalp, a sty on his left eye, a runny nose, and headaches in the sick-call requests. (Doc. No. 18, Ex. C at 33-36.)

On November 11, 2013, Toro submitted a sick-call request for a skin infection in his groin area and dry skin on his chest.[6] (Doc. No. 18, Ex. C at 33.) Toro analogized the skin infection in his groin to "jock itch," and noted that the dry skin on his chest was red and cracking. (Id., Ex. B at 9.) Two days later, on November 13, 2013, Corizon medical staff examined Toro. (Id., Ex. C at 12-13, 33.) The attending nurse characterized the dry skin on his chest as "mild," and prescribed anti-fungal cream for the skin infection in his groin area. (Id. at 12-13, 16, 33.) Toro claims that the anti-fungal cream made his symptoms worse. (Id., Ex. B at 9-10.) Despite these conditions, he did not include either one in subsequent sick-call requests. (Id., Ex. C at 34-36.)

On December 11, 2013, Toro submitted another sick-call request after suffering a nose bleed the night before. (Id. at 34.) Corizon staff scheduled Toro for examination the next day, but Toro could not attend because of a court appearance. (Id.) After his hearing, Toro requested that he be seen by the nurse, but a correctional officer denied his request to go to the medical unit. (Id., Ex. B at 18-19.) Toro then submitted another sick-call request, but the request was unanswered. Id.[7]

On January 10, 2014,[8] Toro submitted another sick-call request for chronic nose bleeds.[9] (Id., Ex. C at 35.) On January 14, 2014, Corizon medical staff examined him. (Id.) The

---

[6] The dry scalp condition also was included in the sick-call request submitted on November 11, 2013. (Doc. No. 18, Ex. C at 33.) On November 13, 2013, Corizon staff examined his dry scalp, concluded it did not require treatment, and suggested that Toro purchase dandruff shampoo from the commissary. (Id., Ex. B at 22; Ex. C at 12-13.)

[7] There is no record that Toro submitted a sick-call request after his hearing on December 12, 2013. His next sick-call request relating to his nose bleeds occurred on January 10, 2014. (Doc. No. 18, Ex. C at 35.)

[8] Toro submitted this sick-call request four days after the Complaint was filed. (See Doc Nos. 2, 3.) Despite the timing of the request, Toro did allege in his Complaint that he suffered

3

examining nurse told Toro that the nose bleeds could be a result of poor ventilation, and advised him that he needed to stay hydrated by drinking water and eating fruit. (Id., Ex. B at 12.) Toro signed his respective sick-call request stating that the issue was resolved.[10] (Id., Ex. C at 35.) In his deposition, Toro testified that he started drinking more water, but claimed that it did not help his nose bleeds. (Id., Ex. B at 12.)

Additionally, Toro states in his Complaint that he received medical attention for lower back pain during one of his examinations, but does not specify when this examination occurred. (Id. at 10-11.) At his deposition, Toro said that the examining nurse did not diagnose the condition as requiring treatment, but suggested that he use muscle rub available for purchase

---

from "constant/continual bloody and runny nose bleeds." (Doc. No. 3 at 3.) Toro did not ask the Court for leave to file an Amended Complaint to include claims based on his January 10, 2014 sick-call request. Corizon did not address the January 10 sick-call request in its Brief in Support of Summary Judgment, but did include this request and Corizon's answer to the request in Exhibit C attached to the Motion for Summary Judgment. (Doc. No. 18, Ex. C at 35.) Although Toro did not seek leave to amend his Complaint, the Court will consider this sick-call request because Corizon has submitted the relevant paperwork in its exhibits and Toro testified about this sick-call request in his deposition. (Id., Ex. B at 11-12.)

[9] Although not mentioned in his Complaint, Toro also included a sty on his left eye in his sick-call request submitted on January 10, 2014. (Doc. No. 18, Ex. C at 35.) On January 14, 2014, Corizon medical staff examined Toro's sty and concluded that there was no medication for his condition. (Id., Ex. B at 18-19.) As noted infra, Toro signed the January 10, 2014, sick-call request stating that the issue had been resolved. (Id., Ex. C at 35.)

[10] Toro said in his deposition that his nose bleeds were first attended to during an examination on March 18, 2014, which was in response to a sick-call request for his runny nose and headaches. (Doc. No. 18, Ex. B at 29; Ex. C at 14-15, 36.) However, on January 14, 2014, Toro signed the sick-call request he submitted on January 10, 2014, which was the only request mentioning his nose bleeds. It contained his affirmation that the issue had been resolved. (Id., Ex. C at 35.) In another part of his deposition, Toro said that he received medical attention for his nose bleeds in January 2014. (Id., Ex. B at 12.) The documentation resulting from his examination on March 18, 2014, however, does not mention bloody noses. (Id., Ex. C at 14.) During the March 18, 2014 examination, Corizon's medical staff prescribed cold medication for his runny nose and concluded that his headaches did not require treatment, suggesting instead that he purchase Advil or Motrin from the commissary. (Id., Ex. B at 14, 29-30; Ex. C at 14-15.)

4

from the commissary. (Id.) Toro used the muscle rub, which he claimed helped "a little bit." (Id.) There is no evidence that he had back pain in any subsequent sick-call request or examination. Based on the above facts, Toro alleges that he received inadequate medical treatment.

### III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata, 511 F. App'x at 158; see also Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id.

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)) (internal quotation marks omitted). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion

y

could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

## IV. ANALYSIS

Toro's sole claim against Corizon is for a violation of his Eighth Amendment right to receive adequate medical care pursuant to 42 U.S.C. § 1983. This statute permits a claim to be brought against every person who, under color of state law, deprives a plaintiff of a federally protected right. 42 U.S.C. § 1983; Adams v. Cnty. of Erie, Pa., 558 F. App'x 199, 202 (3d Cir. 2014). To establish an Eighth Amendment claim based on inadequate medical care, an inmate must prove that the defendants were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

Here, Corizon argues that, as a threshold matter, it is entitled to summary judgment on Toro's Section 1983 claim because it is not liable pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Additionally, Corizon argues that Toro's conditions were not serious medical needs and that it did not act with deliberate indifference to these conditions. The Court will address each argument seriatim.

### A. Defendant Corizon Is Not Liable Under Monell

Corizon is a private corporation. It has a contract with the Philadelphia Prison System to provide healthcare for inmates. A private corporation contracted to provide prison health services can be held liable under Section 1983 for constitutional violations if it maintains a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. Reiss v. Smith, Civ. A. No. 12-2089, 2013 WL 2896832, at *3 (M.D. Pa. June 12, 2013) (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) and Monell, 436 U.S. at 690-92)). Under Section 1983, a private corporation, however, cannot be held responsible for

the acts of its employees under a theory of respondeat superior. Lee v. Abellos, Civ. A. No. 13-0486, 2014 WL 7271363, at *9 (E.D. Pa. Dec. 19, 2014) (citing Monell, 436 U.S. at 691).

Not all actions rise to the level of a custom or policy. Lee, 2014 WL 7271363, at *9. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Id. (citing Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (internal quotation marks omitted)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but is "so widespread as to have the force of law." Id. (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997)).

The Third Circuit recognizes three situations where an act of an individual government employee may be deemed the result of a policy or custom of the government entity:

> The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

Natale, 318 F.3d at 584 (footnote, citations, and internal quotation marks omitted).

Finally, municipal liability or liability of a private corporation only attaches under Section 1983 when the execution of the custom or policy actually causes the injury. Watson v. Abington Twp., 336 F. App'x 163, 167 (3d Cir. 2009).

Here, viewing the facts in the light most favorable to Toro, he fails to either allege in his Complaint or provide any evidence that Corizon, as a private corporation maintaining and acting under color of state law, had a custom or policy that caused deliberate indifference to his medical

needs. Accordingly, Toro's Monell claim cannot withstand summary judgment and will be dismissed.

**B.     Corizon Did Not Act with Deliberate Indifference to a Serious Medical Need**

Next, in order to prevail on a Section 1983 claim based on inadequate medical care, Toro must establish that Corizon acted with deliberate indifference to serious medical needs. Estelle, 429 U.S. at 106.

**1.     Corizon did not act with deliberate indifference to Toro's conditions**

First, Toro must prove that Corizon acted with deliberate indifference to at least one of his conditions. Estelle, 429 U.S. at 104. When the Court views the facts in the light most favorable to him, Toro cannot establish this part of his claim.

Deliberate indifference requires obduracy and wantonness in conduct that exhibits recklessness or a conscious disregard of a serious risk. Harper v. Corizon, Civ. A. No. 14-639, 2015 WL 1608434, at *3 (E.D. Pa. April 10, 2015). It is well settled that claims of negligence or malpractice, without a more culpable state of mind, do not amount to deliberate indifference. Matos v. Prison Health Serv. Inc., Civ. A. No. 14-4517, 2015 WL 2126928, at *3 (E.D. Pa. May 7, 2015) (citing Estelle, 429 U.S. at 106). Likewise, "mere disagreement[] as to the proper medical treatment" is insufficient to establish a constitutional violation. Thomas v. Dragovich, 142 F. App'x 33, 36 (3d Cir. 2005). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Williams v. Giorla, Civ. A. No. 11-6565, 2013 WL 3982348, at *9 (E.D. Pa. Aug. 2, 2013) (citing Ascenzi v. Diaz, 247 F. App'x 390, 391 (3d Cir. 2007) (internal quotation marks omitted)).

Here, Toro merely disagrees with Corizon's medical treatment. He sets forth no facts that would tend to show that Corizon in any way behaved wantonly or consciously disregarded a serious medical risk.

### a. Skin infection in the groin area

Toro fails to provide any evidence that Corizon acted with deliberate indifference to the skin infection in his groin area. Corizon's medical staff examined Toro's skin infection within two days of his sick-call request and provided him with anti-fungal cream to treat it. (Doc. No. 18, Ex. B at 12-13, 16, 33.) Afterwards, Toro did not submit another sick-call request for this condition or bring it to the medical staff's attention in subsequent examinations. Consequently, there was no reason for Corizon to know that the prescribed treatment was ineffective or that there was a need for further action.

Thus, regarding the skin infection in his groin area, there is nothing in the record to suggest that Corizon acted with any "obduracy or wantonness" necessary to establish deliberate indifference. Harper, 2015 WL 1608434, at *3. Toro received prompt medical attention and is merely disputing the adequacy of his treatment. At most, this allegation is an assertion of negligence or malpractice and does not amount to deliberate indifference. See Estelle, 429 U.S. at 106. Courts are "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort laws." Williams, 2013 WL 3982348, at *9. Thus, regarding the skin infection in his groin area, no constitutional violation has been shown by Toro even when the facts are viewed in his favor.

### b. Toro's other conditions

Similarly, Toro provides insufficient evidence to establish that Corizon acted with deliberate indifference to Toro's alleged lower back pain, dry skin on his chest, or nose bleeds.

9

Toro was given prompt medical attention for each condition. His sick-call request regarding the dry skin on his chest was followed up with an examination two days later. (Doc. No. 18, Ex. C at 12-13, 33.) Although Toro was never examined in response to the December 11, 2013 sick-call request regarding his nose bleed, Corizon had scheduled an examination for the next day, December 12, 2013. (Id. at 34.) Toro missed this examination because of a court appearance. (Id.) Corizon, however, promptly responded to the next recorded sick-call request regarding nose bleeds, submitted on January 10, 2014, with an examination on January 14, 2014. (Id. at 35.) In addition, although there is no record of Toro submitting a sick-call request regarding his back pain, Corizon medical staff examined this condition too. (Id., Ex. B at 10-11.)

After examining Toro, Corizon medical staff determined that these conditions did not require treatment and suggested alternative ways he could manage his symptoms. Corizon's nurse suggested that Toro purchase muscle rub from the commissary for his lower back pain. (Id. at 11, 32-33.) For his nose bleeds, the nurse suggested that Toro intake more liquids and eat more fruit. (Id. at 12.) Toro never followed up with a sick-call request for any of these conditions, and Corizon had no reason to know that they persisted.

Accordingly, there is no evidence that Corizon acted with any "obduracy or wantonness" to Toro's lower back pain, dry skin on his chest, or nose bleeds. Harper, 2015 WL 1608434, at *3. Like the skin infection in his groin area, these conditions were given prompt medical attention, and Toro is merely disputing the adequacy of his treatment. For the same reasons that Toro's claim against Corizon for the skin infection in his groin area fails, his claims regarding these three conditions also fail and summary judgment is appropriate. See Estelle, 429 U.S. at 106.

### 2. Toro's conditions were not serious medical needs

Toro also fails to establish that these conditions were serious medical needs under the standard set forth in Estelle, 429 U.S. at 104. A medical need is serious when it "has been diagnosed by a physician as requiring treatment," or when it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003). The need for care must be such that "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." Tsakonas v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991)).

Toro alleges that he did not receive adequate treatment for the following conditions: (1) skin infection in the groin area, (2) lower back pain, (3) dry skin on his chest, and (4) chronic nose bleeds. The Court will address each of these conditions individually.

### a. Skin infection in the groin area

First, Toro fails to provide sufficient evidence to establish that his alleged skin infection in the groin area rose to the level of a serious medical need. The only evidence as to the severity of Toro's alleged skin infection is from his deposition testimony, where he analogizes the alleged infection to "jock itch." (Doc. No. 18, Ex. B at 9.) Although diagnosed by the prison medical staff as requiring treatment, this kind of skin infection was not expected to lead to substantial and unnecessary suffering, injury, or death. Therefore, it is not a serious medical need. Tsakonas, 308 F. App'x at 632 (holding that a serious medical need must be such that "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death").

Other courts have reached the same conclusion. See Planker v. Christie, Civ. A. No. 13-4464, 2015 WL 268847, at *19-20 (D.N.J. Jan. 21, 2015) (holding that an inmate's rashes, including jock itch, did not establish a serious medical need); Young v. Slatowski, Civ. A. No.

11

07-04840, 2011 WL 1044891, at *6 (E.D. Pa. Mar. 22, 2011) (holding that an inmate's severe itching and painful skin irritation from a scabies infection did not rise to the level of a serious medical need); Gonzalez-Reyna v. Ellis, Civ. A. No. 09-522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one that causes pain and itching, is a sufficiently serious medical need" to support a constitutional violation).

### b. Lower back pain

Second, Toro provides insufficient evidence to establish that his alleged lower back pain rose to the level of a serious medical need. Corizon's examining nurse concluded that Toro's alleged lower back pain did not require treatment, and suggested that he purchase over-the-counter muscle rub. (Doc. No. 18, Ex. B at 10-11.) No evidence as to the severity or duration of the back pain, whether he presently experiences pain, or whether the suggested muscle rub was ineffective has been offered by Toro. In the absence of such evidence, Toro's alleged lower back pain could not be expected to lead to substantial and unnecessary suffering, injury, or death. Thus, Toro's back pain is not a serious medical need. See Matos, 2015 WL 2126928, at *4 (holding that an inmate's lower back pain, without specificity as to its severity or duration, did not create substantial and unnecessary suffering and did not amount to a serious medical need); Holmes v. Algarin, Civ. A. No. 12-6245, 2013 WL 4763863, at *5 (E.D. Pa. Sep. 4, 2013) (holding that an inmate's general complaints of back pain did not rise to the level of a serious medical need).

### c. Dry skin on his chest

Third, Toro fails to establish that the dry skin on his chest rose to the level of a serious medical need. Similar to Toro's alleged lower back pain, Corizon's examining nurse concluded that his dry skin was a mild condition that did not require treatment. (Doc. No. 18, Ex. C at 12-13.) Absent any evidence suggesting otherwise, this kind of skin condition could not be

expected to lead to substantial and unnecessary suffering, injury, or death. See Young, 2011 WL 1044891, at *6 (holding that an inmate's severe skin irritation from a scabies infection did not rise to the level of a serious medical need); McKeithan v. Beard, Civ. A. No. 06-965, 2010 WL 2028091, at *4 (W.D. Pa. Apr. 12, 2010) (holding that an inmate's dry skin alone did not rise to the level of a serious medical need).

#### d. Nose bleeds

Finally, Toro's chronic nose bleeds do not establish the existence of a serious medical need. Upon examination, Corizon's nurse determined that his nose bleeds did not require treatment, and suggested that Toro increase his fluid intake. (Doc. No. 18, Ex. B at 12.) Although Toro alleges that he experienced one severe nose bleed, he admits that his subsequent nosebleeds were smaller and less severe. (Id.) These recurring, but mild nosebleeds could not reasonably be expected to lead to substantial and unnecessary suffering, injury, or death. See, e.g., Corbin v. Bickell, Civ. A. No. 13-0856, 2014 WL 3590000, at *10 (M.D. Pa. July 21, 2014) (holding that an inmate's minor respiratory complications, including nose bleeds, did not rise to the level of a serious medical need absent any diagnosis or prescribed treatment); Washington v. City of N.Y., Civ. A. No. 10-389, 2011 WL 566801, at *2 (S.D.N.Y. Feb. 15, 2011) (holding that an inmate's conditions, including constant nose bleeds, did not rise to the severity of a serious medical need).

### V. CONCLUSION

For all the foregoing reasons, Corizon's Motion for Summary Judgment (Doc. No. 18) will be granted. An appropriate Order follows.